**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Petramala, | No. CV-19-00029-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

## INTRODUCTION

In 2004, a judge of the Maricopa County Superior Court issued an order concluding that Plaintiff Michael Petramala was incompetent to stand trial. Although this finding resulted in the dismissal of the criminal charges that were pending against Petramala at the time, it also resulted in the placement of Petramala's name in the National Instant Criminal Background Check System ("NICS")—meaning that Petramala is identified as a prohibited possessor when firearm dealers conduct background checks.

In the 16 years since this finding of incompetency, Petramala has filed a blizzard of lawsuits in an attempt to restore his firearm rights. This is one such lawsuit. Although Petramala's *pro se* complaint has gone through several iterations, his core allegation has remained the same: he seeks to challenge a $398.50 "filing fee" that, in his view, effectively prevents indigent litigants such as himself from pursuing state-court restoration actions.

As it turns out, the alleged "filing fee" doesn't exist. In 2017, a judge of the Maricopa County Superior Court issued a $398.50 sanction award against Petramala and held that Petramala couldn't file any more restoration-related lawsuits until he satisfied the

award. This sanction award, not some "filing fee" of general applicability, is what Petramala seeks to challenge in this lawsuit. The true nature of the sanction award wasn't revealed until the sole remaining defendant in this case, the City of Scottsdale ("the City"), filed a motion to dismiss and asked the Court to take judicial notice of it.

The revelation that Petramala is actually complaining about a sanction award issued by a state-court judge means this lawsuit must be dismissed. Although *Younger* abstention arguably applies in this circumstance, the most obvious jurisdictional impediment is standing—because the City did not impose the sanction award, Petramala's injury is not fairly traceable to the City and an injunction and/or declaration directed at the City would not redress Petramala's alleged injuries. Accordingly, the City's motion to dismiss (Doc. 24) will be granted, Petramala's motion for a preliminary injunction (Doc. 28) will be denied, and this action will be terminated.

## BACKGROUND

The facts set forth below are derived from the operative complaint and from matters that are subject to judicial notice.[1] As noted, some of the key factual allegations in the complaint are contradicted by judicially noticeable materials. Although "the inquiry" at the motion-to-dismiss stage is usually "limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff . . . [courts] need not accept as true allegations contradicting documents . . . that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

I. Underlying State Proceedings

In September 2004, a judge of the Maricopa County Superior Court issued an order dismissing certain criminal charges against Petramala, which had been initiated by the City, based upon a determination that Petramala "is unable to understand the nature of the proceedings and/or is unable to assist counsel in [his] defense, and is therefore criminally

---

[1] "A court may . . . consider certain materials [including] matters of judicial notice . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "It is well established that federal courts may take judicial notice of related state court orders and proceedings." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1136 (C.D. Cal. 2014).

incompetent." (Doc. 24-1 at 8.) Petramala's name was subsequently added to NICS. (Doc. 22 ¶ 9.)

Since September 2004, Petramala has filed an array of lawsuits in an attempt to overturn this incompetency finding and/or restore his firearm rights. *See, e.g., State v. Petramala*, 2015 WL 4538384, *1-*2 (Ariz. Ct. App. 2015) (noting that Petramala initiated separate proceedings in 2007, 2009, 2010, 2012, and 2013 in an effort to restore his firearm rights, that Petramala failed to prevail in any of those proceedings, and that at one point "the superior court found Petramala to be a 'vexatious litigant' and entered an administrative order prohibiting him from filing any actions in Maricopa County without prior court approval").

In June 2016, the Arizona Court of Appeals affirmed the denial of one of Petramala's restoration petitions. *State v. Petramala*, 2016 WL 3360415 (Ariz. Ct. App. 2016).

Undeterred, "[i]n June 2016, Petramala filed another petition to restore his right to possess firearms. The court held a hearing on the petition . . . [and] subsequently denied the petition stating it was 'unable to find by clear and convincing evidence that [Petramala] is not likely to act in a manner that is dangerous to public safety or that the requested relief is not contrary to the public interest.'" *State v. Petramala*, 2017 WL 2180391, *1 (Ariz. Ct. App. 2017). In May 2017, the Arizona Court of Appeals affirmed. *Id.* at *3.

In September 2017, the Maricopa County Superior Court issued an order requiring Petramala to pay $398.50 in sanctions to the City, as reimbursement for the City's attorneys' fees and costs. (Doc. 24-1 at 2-3.) Among other things, the order stated that Petramala "shall be precluded from filing another petition or motion regarding clearance of records, NICS removal, or competency until the awarded fees have been paid." (*Id.*) Petramala subsequently pursued review of this order in the Arizona appellate courts. (Doc. 24-1 at 5.) Those appellate proceedings, which were ongoing at the time Petramala initiated this action, culminated in April 2019, when the Arizona Supreme Court denied Petramala's petition for review. (*Id.*)

…

II.     Procedural History

On January 2, 2019, Petramala initiated this action by filing a complaint (Doc. 1) and an application to proceed in forma pauperis (Doc. 2). In this iteration of the complaint, Petramala sued three defendants—(1) the State of Arizona, (2) the United States Attorney General, and (3) the United States—based in part on the allegation that "the state of Arizona is violating the dormant commerce clause by adding impermissible fees to a database regulating interstate commerce, which are overly burdensome and preempted by congress." (Doc. 1 ¶ 8.)

On January 30, 2019, the Court issued a screening order dismissing the complaint for failure to state a claim. (Doc. 7.) Although this order concluded the dismissal should be with prejudice, Petramala subsequently filed a motion for reconsideration. (Doc. 9.) Among other things, Petramala stated in this motion that "the filing fee[] complained of in this action" was a "recently" enacted "$398.50 filing fee . . . which prevented Petramala from filing any more NICS removals from that point onward." (*Id.* at 3.)

On February 15, 2019, the Court issued an order granting the motion for reconsideration. (Doc. 15.) Specifically, the Court held that although none of the defendants identified in the original complaint were proper (the federal defendants could not be sued for alleged flaws in the Arizona state restoration process and the State had Eleventh Amendment immunity from suit), Petramala's clarification regarding the "filing fees" meant that it might be possible for Petramala to amend his complaint to state a claim. (*Id.* at 3-4.) Thus, Petramala was afforded leave to amend. (*Id.*)

On February 19, 2019, Petramala filed his first amended complaint ("FAC"). (Doc. 16.) In this iteration of the complaint, Petramala sued the following defendants: (1) Judge Sam Myers of the Maricopa County Superior Court, (2) the Maricopa County Superior Court, (3) Governor Doug Ducey, (4) the Maricopa County Board of Supervisors, and (5) the City. (*Id.* at 1.) Scattered throughout the FAC were various references to the purported "filing fee," which was described as a fee of general applicability. (*See, e.g., id.* at 1 ["Sam Myers . . . . has blocked Petramala from obtaining NICS removal . . . due to $398.50 in filing fee and NICS expert witness costs."]; *id.* at 3 ["Defendants have enacted an unduly

burdensome $398.50 fee, which regulates interstate commerce of NICS removal and is not authorized by congress and such fee is prohibited by article one, section eight of the constitution."]; *id.* ["[A]n indigent must be allowed access to the courts without the ability to pay the $398.50 fee required for NICS removal."].)

On April 23, 2019, the Court issued a screening order dismissing the FAC for failure to state a claim but granting Petramala further leave to amend. (Doc. 21.) Among other things, this order held that the FAC was flawed because "it repeatedly lumps together all of the defendants as a collective whole—'Defendants'—without specifically alleging the role that each defendant played in causing Plaintiff's alleged injury." (*Id.* at 4.) The order also noted that "Judge Sam Myers is the only defendant to which Petramala attributed specific conduct," yet "the claims against Judge Myers are barred" because "[w]hen a judge determines the proper disposition of a case pending before him, this is undoubtedly a judicial act, for which judges have absolute immunity from liability." (*Id.* at 7.) Finally, and most important here, the Court specified that "[t]he Second Amended Complaint must clarify what entity charges the $398.50 filing fee that is at the heart of this litigation." (*Id.* at 8.)

On April 29, 2019, Petramala filed his second amended complaint ("SAC"). (Doc. 22.) In this iteration of the complaint, Petramala sued all of the defendants identified in the FAC except for Judge Myers (*i.e.,* the Maricopa County Superior Court, Governor Ducey, the Maricopa County Board of Supervisors, and the City) and asserted two causes of action: (1) a claim for disability discrimination under the Americans with Disabilities Act ("ADA") and (2) a § 1983 claim for "Fourteenth Amendment Due Process and Dormant Commerce Clause violations." (*Id.* at 3-4, capitalization omitted.)

On July 18, 2019, the Court issued a screening order dismissing Count I of the SAC for failure to state a claim and, as for Count II, dismissing the Maricopa County Superior Court (because it is a non-jural entity), Governor Ducey (because the SAC failed to allege any facts concerning his role in the imposition of the filing fee), and the Maricopa County Board of Supervisors (same reason as Governor Ducey). (Doc. 23.) This meant that the only remaining defendant was the City and the only remaining claim was Count II. (*Id.*)

On September 4, 2019, the City filed a motion to dismiss.  (Doc. 24.)

On September 9, 2019, Petramala filed a response.  (Doc. 26.)

On September 16, 2019, the City filed a reply.  (Doc. 27.)

On December 20, 2019, Petramala moved for a preliminary injunction.  (Doc. 28.)

On January 3, 2019, the City filed a response.  (Doc. 29.)

On January 6, 2020, Petramala filed a reply.  (Doc. 30.)

## DISCUSSION

The City moves to dismiss the SAC for various reasons, including that *Younger* abstention bars the Court from reviewing a sanction award imposed by a state-court judge. (Doc. 24 at 3-4.) As discussed below, although *Younger* abstention likely precludes the Court from deciding any claims related to the sanction award, Petramala's lack of standing provides an even stronger basis for dismissal.

I.     *Younger* Abstention

As discussed, judicially noticeable documents establish that Petramala isn't being assessed a $398.50 "filing fee" in order to pursue a restoration petition—instead, Petramala was sanctioned by a state-court judge and was ordered by that judge not to file any more restoration actions until he satisfied the $398.50 award.  Thus, as a practical matter, Petramala is seeking in this lawsuit to raise a constitutional challenge to a state-court judge's sanction award.

Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. State of Virginia*, 19 U.S. 264, 404 (1821). "*Younger* abstention remains an extraordinary and narrow exception" to this general rule. *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018) (quotation omitted). "Circumstances fitting within the *Younger* doctrine . . . are exceptional; they include . . . state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quotations omitted). "[T]hese three 'exceptional' categories . . . define *Younger*'s scope." *Id*. at 78.

Here, the third category is likely applicable—a sanction award, such as the one

imposed against Petramala, is an order uniquely in furtherance of the state courts' ability to perform their judicial functions. Other courts have held that "interfering with a state court's ability to impose . . . sanctions and fees, for instance by enjoining the parties before the state court from seeking execution of final judgment, would . . . constitute an exceptional circumstance in which the relevant state proceedings involve an order uniquely in furtherance of the state court's ability to perform its judicial functions." *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 24 F. Supp. 3d 1181, 1193 (M.D. Fla. 2014). *See also Jou v. Chang*, 350 F. Supp. 2d 862, 864, 866 (D. Haw. 2004) (abstaining under *Younger* where the federal plaintiff, who was the subject of a pending motion for attorneys' fees in state court, sought to challenge the constitutionality of the state statute under which the fee motion was brought: "[T]he Constitutional question involves both the state's important policy interest in discouraging frivolous and vexatious litigation, as well as the state's interest in the functioning of its judicial system. As such, this Court concludes that Plaintiff's case does involve an important state interest."). Granting the relief sought by Petramala would interfere with a state-court sanction award and undermine the process by which the award obtained. Thus, the underlying litigation likely qualifies as an exceptional circumstance in which the Court may consider whether *Younger* abstention is appropriate.

"*Younger* abstention is appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicate[s] important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seek[s] to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quotations omitted). "However, even if *Younger* abstention is appropriate, federal courts do not invoke it if there is a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Id*. at 765-66 (quotations omitted).

As for the first factor, "[t]he critical date for purposes of deciding whether abstention principles apply is the date the federal action is filed." *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004). Petramala filed his complaint on January 2, 2019. At that

time, the state-court litigation arising from the sanction award was still ongoing. The sanction award was issued on September 5, 2017 (Doc. 24-1 at 3) and the Arizona Supreme Court did not deny Petramala's petition for review until April 1, 2019 (*id.* at 5).

As for the second factor, the "key to determining" whether an important state interest is implicated "is to ask whether federal court adjudication would interfere with the state's ability to carry out its basic executive, judicial, or legislative functions." *Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 883 (9th Cir. 2011). "The importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003). Here, an important state interest is implicated. Other courts have found that the imposition of attorney-fee awards "involves both the state's important policy interest in discouraging frivolous and vexatious litigation, as well as the state's interest in the functioning of its judicial system." *Jou*, 350 F. Supp. at 866. To forbid the collection of the fees at issue would undermine the state's ability to administer its judicial system and raise serious federalism and comity concerns.

As for the third factor, "*Younger* abstention does not turn on whether the federal plaintiff actually avails himself of the opportunity to present federal constitutional claims in the state proceeding, but rather whether such an opportunity exists." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1046 (9th Cir. 2019). "[T]he burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of [its] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (quotation omitted). Here, Petramala makes no argument that state procedural law barred him from presenting his federal constitutional claims during his state-court appeal of the $398.50 sanction award.

As for the fourth factor, the "requested relief must seek to enjoin—or have the practical effect of enjoining—ongoing state proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014). "*Younger* applies to requests for declaratory relief because ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Gilbertson*, 381 F.3d at 971 (quotations

omitted). Here, the SAC requests a declaration that "NICS removal fees not explicitly authorized by Congress violate federal law and/or are void" (Doc. 22 at 10) and Petramala additionally states that he is "seeking an injunction against [the City] to order it to . . . waive collection of the $398.50 NICS fees." (Doc. 26 at 6.) Thus, Petramala is seeking relief that will enjoin, or have the practical effect of enjoining, ongoing state proceedings.

Notwithstanding all of this, Petramala argues that this case "falls into the exceptions" of *Younger* because (1) the City's refusal to "remove an innocent person on NICS due to poverty is a bona fide instance of 'great and immediate irreparable injury'" and (2) "[b]ut for the malice of Defendant Scottsdale, the NICS case would not have occurred." (Doc. 26 at 6.) The City does not respond to these arguments in its reply.

*Younger* abstention is inapplicable under "extraordinary circumstances where the danger of irreparable loss is both great and immediate." *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987). "Irreparable injury may possibly be established . . . by a showing that the challenged state statute is flagrantly and patently violative of express constitutional prohibitions." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 366 (1989) (quotation omitted). Here, Petramala argues that the so-called "NICS fees" violate the Due Process and Dormant Commerce Clauses. But this argument is based on the mischaracterization of the $398.50 as a filing fee, when it is actually a sanction award. Petramala has not established that a state court's ability to award sanctions, or the fact that a state court awarded sanctions against him, is patently or flagrantly violative of the Due Process or Dormant Commerce Clauses. Additionally, the judges in Petramala's earlier restoration proceedings concluded that, on the merits, he is not eligible for restoration.

"If state proceedings are conducted in bad faith or to harass the litigant . . . the district court may exercise jurisdiction even when the criteria for *Younger* abstention are met." *Baffert*, 332 F.3d at 621. Here, Petramala asserts in conclusory fashion that the malice of the City is the but-for cause of his predicament (Doc. 26 at 6), but he alleges no facts to support this allegation. *Cf. Baffert*, 332 F.3d at 621 ("In the absence of any evidence of bad faith, such as bias against Plaintiff, or of a harassing motive, no exception

to the application of *Younger* abstention is warranted.").

For all of these reasons, there is a strong argument that *Younger* abstention precludes the Court from addressing Petramala's claims relating to the sanction award.

II.     Standing

Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. *See* U.S. Const., Art. III, Section 2, Clause 1. "[O]ne of the controlling elements in the definition of a case or controversy under Article III is standing. The requisite elements of Article III standing are well established: A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 598 (2007) (quotation omitted). Courts have an independent duty to examine jurisdictional issues such as standing and may raise such issues *sua sponte*. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing."); Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

Here, the clarification that Petramala is actually challenging a sanction award issued by a state-court judge means that his claims against the City—which is the sole remaining defendant in the SAC—fail for lack of standing. "The causation element" of the constitutional standing test "requires that a proper defendant be sued. That is, a plaintiff's claimed injury must have been caused by 'acts of the defendant, not of some absent third party.'" *Common Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014) (citation omitted). Here, the premise underlying the SAC is that the City is responsible for implementing and charging a $398.50 "filing fee" that is unconstitutionally interfering with Petramala's ability to seek the restoration of his firearm rights. (Doc. 22 ¶ 5 ["The City of Scottsdale is responsible for making monetary decisions regarding NICS removal fees."].) This is simply not true. The $398.50 sanction award was imposed by a state-court judge, not by the City. Additionally, it was the judge who decided, as part of the sanction order, to bar

Petramala from filing future restoration actions until he paid the $398.50.  Thus, the City cannot be said to have caused Petramala's injury.

For similar reasons, granting the relief sought in the SAC would not redress Petramala's asserted injuries.  The SAC requests a declaration that "NICS removal fees not explicitly authorized by Congress violate federal law and/or are void."  (Doc. 22 at 10.)  But issuing such a declaration as to the City would accomplish nothing—the City isn't involved in promulgating NICS removal fees and such a declaration would not, in any event, undermine the validity of the sanction award that was issued by the state-court judge.  *Cf. Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020) ("To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award. . . . Redress need not be guaranteed, but it must be more than 'merely speculative.'").

Finally, the SAC also seeks a declaration that the City must "appoint a NICS removal expert on Petramala's behalf."  (Doc. 22 at 10.)  The City argues that it "does not have a duty to supply criminally incompetent individuals with free expert witnesses or attorneys" and that it is Petramala's "sole burden to petition for the restoration of his gun rights," citing A.R.S. § 13-925 and 18 U.S.C. § 925(c).  (Doc. 24 at 4.)  Petramala responds that both state and federal law require the appointment of counsel and compensation for expert witnesses, citing A.R.S. § 13-4013 and 18 U.S.C. § 3006A.  (Doc. 26 at 4.)  The City replies that neither statute pertains to the obligations of a municipality and that Petramala is not entitled to expert witnesses because he is not being charged with a crime and is not the subject of an insanity hearing.  (Doc. 27 at 2.)

Petramala lacks standing to seek this relief against the City.  As an initial matter, Petramala fails to explain how the cited statutes would empower the City (let alone require the City) to appoint and compensate experts and attorneys on his behalf.  A.R.S. § 13-4013(A) governs the compensation of court-appointed counsel and expert witnesses under Arizona law and provides, in relevant part, that "[i]f counsel is *appointed by the court* and represents the defendant in either a criminal proceeding or insanity hearing, counsel shall be *paid by the county* in which the court presides."  *Id.* (emphasis added).  Nothing in this

statute suggests that cities somehow have an affirmative duty to provide litigants with free experts and counsel in restoration proceedings. Nor does 18 U.S.C. § 3006A support Petramala's position—nothing in that statute indicates that a municipal defendant in a state-court restoration proceeding must appoint and compensate the plaintiff's experts and counsel.

More important, Petramala has alleged elsewhere that the $398.50 fee—which has now been revealed as a sanction award—is preventing him from pursuing a restoration proceeding. Thus, Petramala cannot demonstrate that the City's failure to provide him with counsel and experts in a hypothetical future restoration proceeding, which he concedes he cannot pursue, has caused him to suffer any injury. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (to meet the "irreducible constitutional minimum of standing . . . the plaintiff must have suffered an 'injury in fact' . . . [that is] actual or imminent, not conjectural or hypothetical") (quotations omitted).

III.   Leave To Amend

Petramala has not, in his response to the City's motion to dismiss, requested leave to amend in the event of a dismissal. Even if Petramala had made such a request, it would have been denied.

"Rule 15 advises the court that leave [to amend] shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations and internal quotation marks omitted). Additionally, "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Nevertheless, "liberality in granting leave to amend is subject to several limitations." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citation and internal quotation marks omitted). "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Id.* Also, "when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publishing*

*Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citation omitted).

Here, these considerations cut against a grant of leave to amend. As noted, Petramala has filed a high volume of restoration-related lawsuits against the City and other entities over the last 16 years, causing those entities to incur substantial expense. It would be prejudicial to require the City to continue expending resources on this matter. Additionally, Petramala has already been afforded several opportunities to craft a viable complaint and appears unable to do so—as noted, he mischaracterized the nature of the $398.50 sanction award in the first three versions of his complaint (and in his motion for reconsideration of the first dismissal order).

Accordingly, **IT IS ORDERED** that:

(1) The City's motion to dismiss (Doc. 24) is **granted**.

(2) Petramala's motion for a preliminary injunction (Doc. 28) is **denied as moot**.

(3) The Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 10th day of June, 2020.

Dominic W. Lanza
United States District Judge